ECKMANN, Jeanne; Eckmann, Gregory a minor by Jeanne Eckmann, his mother and next friend, plaintiffs,

v.

BOARD OF EDUCATION OF HAW-THORN SCHOOL DISTRICT NO. 17, O'Brien, John; Schossow, Norman; Shafer, Mary; Stermer, Richard; Stunz, Jim; Dillenberg, Kenn; Chamberlain, Claudia; Platt, George, Defendants.

No. 84–MISC–312.

United States District Court, E.D. Missouri, E.D.

May 14, 1985.

Edward Diedrich, De Kalb, Ill., for plaintiffs.

John R. Wienold, Aurora, Ill., George Krippner, Geneva, Ill., David M. Harris, St. Louis, Mo., for defendants.

## MEMORANDUM

NANGLE, Chief Judge.

This matter is before the Court on the motion of defendants for an order compelling the answer of all areas of questioning contained in the deposition of Sister Dominic Rowe. A notice of foreign deposition was filed in this Court in the above-entitled matter by defendants for the deposition of Sister Dominic. The Sister appeared at the deposition, but refused to answer a number of questions directed toward her regarding the content of some communications between herself and plaintiff. She maintains that these communications were made in confidence and under the auspices of her role as plaintiff's spiritual director. Sister Dominic submitted some documentation that plaintiff had been a postulant seeking admission as a sister in the religious congregation of the School Sisters of Notre Dame. Plaintiff chose Sister Dominic Rowe as a spiritual director at that time, in order to fulfill a requirement for admission to the congregation.

Plaintiff brought this action in the Northern District of Illinois under two federal statutes, 42 U.S.C. §§ 1983 and 1988. In addition, she appended three state law claims. The notice of deposition was filed in the Eastern District of Missouri, however, and Sister Dominic resides in Missouri. This Court must first determine which law applies to the question at hand.

The availability of privileges in federal court is controlled by Rule 501, *Fed.R. Evid.* 501. This rule provides that:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which

State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

The instant action involves both questions of federal and state law. In *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458 (N.D.Calif.1978), the court held that under such circumstances, federal law of privilege should apply to the federal claims, and state law of privilege to the state claims. This rule is inapplicable when the privilege protects evidence which affects both the state and federal claims, however. *See also Los Angeles Memorial Coliseum Commission v. N.F.L.*, 89 F.R.D. 489, 491 (C.D.Calif.1981); *Federal Deposit Insurance Corp. v. Mercantile National Bank of Chicago*, 84 F.R.D. 345, 349 (N.D.Ill. 1979). In the instant action, the parties have not indicated whether the sought after information relates to the state or federal claims. Yet, Sister Dominic has implied that such evidence pertains to all claims. This Court will, therefore, presume that the information sought relates to both the federal and state claims.

In *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. at 458, the court held that in federal question actions with pendent state law claims, the federal common law of privilege governs. This is because the policy of Rule 501 allows federal law to control federal question actions. This policy should not be abrogated merely because pendent claims are attached. On the other hand, the court in *Federal Deposit Insurance Corp. v. Mercantile National Bank of Chicago*, 84 F.R.D. at 349, pointed out that in the legislative history of Rule 501, Congress expressed a preference for the rule favoring the reception of evidence in the presence of two conflicting rules of privilege. It is unnecessary for this Court to choose between the *Perrignon* and *F.D. I.C.* decisions because Sister Dominic's testimony is privileged under both federal and state law.

The "priest-penitent" privilege has clearly been recognized by federal courts.
*United States v. Luther*, 481 F.2d 429, 432 (9th Cir.1973); *United States v. Wells*, 446 F.2d 2, 4 (2d Cir.1971); *Mullen v. United States*, 263 F.2d 275, 277–80 (D.C.Cir.1958). Although this Court has not found a case which clearly sets out the prerequisites under which this privilege attaches, the court in *In re Verplank*, 329 F.Supp. 433, 436 (D.C.Calif.1971), found that the privilege was available for individuals functioning as clergymen. The *Verplank* court found that individuals serving as draft counselors were performing the same functions as clergymen, and hence were entitled to the priest-penitent privilege.

■ The state law applicable to the question at hand is that of Missouri because the notice of deposition was filed in this Court. *Palmer v. Fisher*, 228 F.2d 603, 608–609 (7th Cir.1955). The Missouri statute provides:

The following persons are incompetent to testify:

\* \* \* \* \* \*

(4) Any person practicing as a minister of the gospel, priest, rabbi or other person serving in a similar capacity for any organized religion, concerning a communication made to him in his professional capacity as a spirtual advisor, confessor, counselor, or comforter.

Section 491.060 R.S.Mo. (1984).

■ This Court concludes that Sister Dominic's position as plaintiff's spiritual advisor is conduct sufficient to invoke the priest-penitent privilege under both Missouri and federal law. The Sister submitted a number of affidavits to establish that a spiritual director is a recognized office in the Catholic Church, and is considered to be a form of ministry of the Gospel by the Church. It is undertaken by priests and sisters alike. In addition, since Vatican II, the Church has allowed sisters to engage in religious and spiritual direction, in giving retreats and in administering Holy Communion. These are other means by which sisters engage professionally in the ministry of the Gospel. This Court concludes that in serving as plaintiff's spiritual di-

rector, Sister Dominic Rowe occupied such a position within the Church and was performing such a function as to entitle her to the priest-penitent privilege.

This Court takes note of the decision in *In re Murtha*, 115 N.J.Super. 380, 279 A.2d 889 (1971), where a court held that the privilege did not extend to a nun in the Catholic Church under a New Jersey statute. The reasoning was that the nun did not perform the normal functions of a priest, did not conduct religious services, and had no powers or functions insofar as the Catholic Church was concerned. *Murtha* is distinguishable, however, because of the evidence presented by Sister Dominic that she does in fact perform a number of priestly functions which are recognized by the Catholic Church.

Defendants next argue that plaintiff waived the privilege by filing a lawsuit and by submitting the facts of her case to publishers. Under the Missouri statute, the privilege belongs to Sister Dominic, however, and cannot be waived by plaintiff. *See Seidman v. Fishburne-Hudgins Educational Foundation, Inc.*, 724 F.2d 413, 415–16 (4th Cir.1984) (analyzing the Virginia statute which is very similar to that of Missouri). Nor can this Court conclude that plaintiff waived the privilege under federal common law by the filing of the lawsuit. The purpose behind Rule 501 is to provide the courts with the flexibility to develop rules of privilege on a case-by-case basis. *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980). In addition, federal courts look to state law for guidance and tradition regarding the development of rules of privilege. *Los Angeles Memorial Coliseum Commission v. N.F.L.*, 89 F.R.D. at 492. Although federal courts have not determined that the priest-penitent privilege belongs to the clergyman under federal common law, most state statutes vest the privilege in the clergyman. *Seidman v. Fishburne-Hudgins Educational Foundation, Inc.*, 724 F.2d at 415. The statutes are generally designed to "safeguard the clergyman's status as a secure repository for the confessant's confidences." *Id.* Therefore, this Court concludes that under federal law the priest-penitent privilege belongs to the clergyman, and cannot be waived by plaintiff. This position is consistent with the law pertaining to other privileges as well. *See, e.g., Trammel v. United States*, 445 U.S. at 53, 100 S.Ct. at 914.

For the foregoing reasons, the priest-penitent privilege applies to the areas of questioning directed to Sister Dominic Rowe by defendants' deposition. Defendants have not suggested that Sister Dominic improperly invoked the privilege in any one of these areas. Therefore, the motion is denied.