### In re INTERNATIONAL HORIZONS, INC., et al.

### INTERNATIONAL HORIZONS, INC., et al.

### v.

### The COMMITTEE OF UNSECURED CREDITORS.

### Civ. A. No. C81–2127A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 29, 1981.

---

Dale M. Schwartz, Troutman, Sanders, Lockerman & Ashmore, David G. Bisbee, Bisbee & Parker, Atlanta, Ga., for Intern. Horizons.

Alfred S. Lurey, Dennis S. Meir, Condé Thompson Cox, Kilpatrick & Cody, Atlanta, Ga., for Committee of Unsecured Creditors.

Jeffrey M. Smith, Richard L. Shackelford, Trotter, Bondurant, Miller & Hishon, Atlanta, Ga., Robert Bartels, Touche Ross & Co., New York City, for Touche Ross & Co.

## ORDER

ORINDA D. EVANS, District Judge.

This case is a consolidated bankruptcy proceeding involving six related Debtors. The Committee of Unsecured Creditors ("Committee") is seeking access to certain financial documents and workpapers[1] in the possession of Touche Ross & Co.[2] Touche Ross and Debtors[3] strongly object

---

1. Touche Ross and Debtors do not contest the Bankruptcy Court's order insofar as it relates to Debtors' documents in Touche Ross's possession, and it is beyond question that the Committee is entitled to them. Consequently the decision in this Order relates to Touche Ross's workpapers only.

2. Touche Ross performed Debtors' auditing and tax work for many years and the Bankruptcy Court has appointed Touche Ross as the auditor for Debtors in this proceeding.

3. Attorneys for Touche Ross have briefed the privilege issue before both the Bankruptcy Court and this Court and Debtors have been content to rely on Touche Ross's submissions.

to any such discovery, asserting the protection of the accountant-client privilege. On September 24, 1981, after the full consideration of the arguments raised by Touche Ross, the Bankruptcy Court, 14 B.R. 199, ordered Touche Ross to produce the requested documents.[4] Debtors and Touche Ross appealed that order to this Court.

■ Before reaching the merits, the Court must decide whether it can hear this appeal at the present time. Touche Ross, a nonparty, objects to discovery of documents it claims are privileged. Requiring production before an appeal is heard would destroy the privilege, and effectively nullify Touche Ross's interests in this case. Under these circumstances, the Fifth Circuit has held that an order requiring a nonparty to produce allegedly privileged documents is a final order and therefore is immediately appealable. *Overby v. United States Fidelity and Guaranty Co.*, 224 F.2d 158 (5th Cir. 1955). The Court concludes that it can and must hear this appeal in order to protect the interests of Touche Ross, and to avoid rendering the claimed privilege illusory.[5]

Rule 501 of the Federal Rules of Evidence is at the heart of this dispute. Before considering Touche Ross's Rule 501 arguments, however, the Court will treat those arguments raised by Touche Ross which are independent of Rule 501. These arguments are based on Fed.R.Civ.P. 26 and on 26 U.S.C. § 6103.

■ The Rule 26 argument is two-fold. Touche Ross first contends that Rule 26(b)(4)(B) permits the discovery of its workpapers only on a showing of exceptional circumstances. This argument depends on Touche Ross's characterization of itself as an "expert" in this case, because Rule 26(b)(4)(B) by its own terms applies only to discovery of "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial." The Court is well aware of Touche Ross's reputation as an expert firm in the field of accounting; however, it is clear from the circumstances of Debtors' employment of Touche Ross and the nature of the information sought by the Committee that Touche Ross is not an "expert who has been retained or specially employed by [Debtors] in anticipation of litigation" within the meaning of Rule 26(b)(4)(B). Alternatively, Touche Ross contends that the Committee is seeking discovery of documents "prepared in anticipation of litigation or for trial or for another party or by or for that other party's representative," and thus the Committee is required by Rule 26(b)(3) to demonstrate substantial need and difficulty of obtaining the information from alternative sources. The Court does not believe that in enacting Rule 26(b)(3) Congress intended to protect routine accounting documents prepared by an auditor who knew that litigation "might eventually result" from existing "friction" between his client and another, as Touche Ross argues.

■ Touche Ross bases another argument on a section of the Internal Revenue Code that provides that "returns and return information shall be confidential" as a "general rule." 26 U.S.C. § 6103(a). However, section 6103 is intended to protect tax information from disclosure only by the government;[6] the primary authority on

---

In this order the Court will refer to the joint arguments of Debtors and Touche Ross as those of Touche Ross.

4. The Bankruptcy Court permitted Touche Ross to withhold only the material that Touche Ross deemed to contain trade secrets. Order dated September 24, 1981 at 5.

5. The Committee relies heavily on *In re Manufacturers Trading Corp.*, 194 F.2d 948 (6th Cir. 1952), for the proposition that an order denying a motion to quash a subpoena on an account-

ant is not immediately appealable. However, the accountant in that case did not base his refusal to comply with the subpoena on an evidentiary privilege; consequently *Overby* is the more relevant case.

6. The statute defines a "return" as certain documents "filed with the Secretary," 26 U.S.C. § 6103(b)(1), and "return information" as certain information "received by, recorded by, prepared by, furnished to, or collected by the Secretary." 26 U.S.C. § 6103(b)(2)(a). Furthermore, the "general rule" of section 6103(a) for-

which Touche Ross relies admits as much. *Federal Savings & Loan Insurance Corp. v. Krueger*, 55 F.R.D. 512, 514 (W.D.Ill.1972). The Court accepts Touche Ross's argument that section 6103 establishes a general policy in favor of the confidentiality of tax returns and the information underlying them. In this case, however, the Committee is seeking information in order to enable it to accurately assess a Plan of Arrangement proposed by Debtors. The financial information which provides the basis for a tax return is precisely the information needed by the Committee. The Court concludes that the Committee's needs are sufficient to overcome any general presumption of confidentiality.

Touche Ross's more persuasive arguments are based on Rule 501 of the Federal Rules of Evidence, which governs the existence and scope of evidentiary privileges in the federal courts. Rule 501 provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

According to Touche Ross, Rule 501 requires the Court to recognize the accountant-client privilege on two independent theories.[7] First, Touche Ross suggests that this is a proper case for the Court to recognize the privilege as a matter of federal common law, pursuant to the admonition of the first sentence of Rule 501 that matter "be governed by the principles of the common law ... in the light of reason and experience." Second, Touche Ross contends that the Court is required to apply Georgia's accountant-client privilege,[8] pursuant to the second sentence of Rule 501, because this case contains claims and defenses "as to which State law supplies the rule of decision." The Court will consider these arguments in reverse order.

State privilege law must apply, Touche Ross argues, because state law supplies the rule of decision as to the very existence of the claims of members of the Committee and other creditors; bankruptcy "claims" arise out of contracts governed by state law. Furthermore, according to Touche Ross, a major purpose of the Committee in seeking discovery of its documents is to search out past wrongdoing by Debtors' management, and such wrongdoing is governed by the Georgia law of fraud and fiduciary relationships.

■ Congress clearly intended that the second sentence of Rule 501 would require

---

bids disclosure of any return or return information obtained by a person "in connection with his service as ... an officer or an employee" of the United States or state or other agency with authorized access to the *federal government's* compilation of such information.

7. Touche Ross raises an additional argument that ignores the existence of Rule 501 altogether. Touche Ross contends that the existence of evidentiary privileges is a question of substantive law, and thus the Court must apply state law under the dictates of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Touche Ross accurately points out that the *Erie* doctrine is not limited to diversity cases, and cites several cases decided prior to the enactment of Rule 501 in which federal courts applied the state law of privilege

in federal question cases. In enacting Rule 501, however, Congress made it quite clear that "in nondiversity jurisdiction civil cases, federal privilege law will generally apply." Conf.Rep. No. 1597, 93rd Cong., 2d Sess. 7, *reprinted in* [1974] U.S.Code Cong. & Ad.News 7098, 7101. Touche Ross's *Erie* argument leads inexorably to the conclusion that state law privileges apply at all times in all cases in federal courts; this conclusion would negate the first sentence of Rule 501, and is directly at odds with the legislative history quoted above.

8. Ga.Code § 84–220(b) provides an evidentiary privilege to communications between an accountant and his client and to all information about the client obtained by the accountant in his professional capacity.

federal courts generally to apply state privilege law in diversity cases. *See* Conf.Rep. No. 1597, 93rd Cong., 2d Sess. 7–8, *reprinted in* [1974] U.S.Code Cong. & Ad.News 7098, 7101; *see, e.g., Commercial Union Insurance Co. v. Talisman, Inc.*, 69 F.R.D. 490 (E.D.Mo.1975). It is equally clear that Rule 501 requires the application of state privilege law to pendent state claims in a federal action, but only to protect information relevant only to the state claims. *See, e.g., Federal Deposit Insurance Corp. v. Mercantile National Bank*, 84 F.R.D. 345, 349 (N.D. Ill.1978); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295, 313 (D.Md.1977); *In re Blier Cedar Co.*, 10 B.R. 993 (B.Ct.D.Me. 1981) (Cyr, B.J.); 10 *Moore's Federal Practice* § 501.08 (2d ed. 1981). Touche Ross asks the Court to go further in this case, and to apply the state law privilege to a federal question case on the theory that certain claims and defenses might arise under state law.

■ Touche Ross's arguments, however, ignore the basis for the Committee's inquiries into the financial history of Debtors. The Committee is empowered by federal law to "investigate the acts, conducts, assets, liabilities and financial condition of the debtor, the operation of the debtors' business and the desirability of such business, and any other matter relevant to the case or the formulation of a plan." 11 U.S.C. § 1103(c)(2). The Committee seeks discovery of Touche Ross documents to permit it to more effectively evaluate the financial condition and the past operations of Debtors. Historical financial information and the historical workpapers of Touche Ross are relevant to the inquiry that the Committee is undertaking in performing the role imposed on it by federal law.

Touche Ross asks the Court to lose sight of the fact that this is a proceeding brought under federal bankruptcy law, and that it was Debtors who sought the protection of federal law. At this state in the litigation, it is not clear to the Court what claims and defenses might eventually arise, and whether they might contain elements as to which state law supplies the rule of decision. It is clear, however, that this is a federal law proceeding initiated by Touche Ross's client, in which the Committee is seeking discovery pursuant to federal law. The Court therefore declines to apply the Georgia accountant-client privilege.

Touche Ross's most persuasive arguments are based on the first sentence of Rule 501. In essence, Touche Ross contends that this is a proper case for the Court to recognize the accountant-client privilege as a matter of federal law "in the light of reason and experience."

■ In enacting the first sentence of Rule 501, Congress intended that the federal courts applying federal privilege law would further develop existing privileges, and would formulate new privileges as the need arose. *See* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 501[03], at 501–30 (1981). In developing the federal law of privilege courts are not governed by *per se* rules, but must determine whether privileges will be recognized on a case by case basis. *Upjohn v. United States*, 449 U.S. 383, 395–97, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584, 595–96 (1981).

■ Touche Ross suggests that the Court consider the traditional considerations set forth by Professor Wigmore in deciding whether to recognize the accountant-client privilege as a matter of federal law in this case. Those considerations are: (1) that the communication originates in confidence, in the parties' belief that it will not be disclosed; (2) that confidentiality be essential to the full and satisfactory relation between the parties; (3) that the relation be one which ought to be fostered; and (4) that the injury to the relation caused by disclosure would be outweighed by the benefit gained by the disclosure. 8 *Wigmore on Evidence* § 2285, at 527 (McNaughton rev. 1961). The Court is not convinced that these criteria are met in this case. For example, Debtors and their related companies have farflung business operations, but Touche Ross admits that the accountant-client privilege is not recognized by at least 32 states and has never been recognized by a federal court. Furthermore, Georgia's

statutory accountant-client privilege, Ga. Code § 84–220(b), was not enacted until 1977, long after some of the communications at issue in this case. Thus any reliance by the parties on the confidentiality of their communication was not reasonable. Nor is the Court convinced that the privilege was necessary in this case to the full and satisfactory relation between the parties. Debtors' full disclosure to Touche Ross was guaranteed by their need for Touche Ross's certification of their financial statements, and by the unwillingness of a firm of Touche Ross's stature to make such a certification unless it was convinced that Debtors had made full disclosure.

■ The Court is more impressed by Touche Ross's comity argument. The Georgia legislature has decided that the accountant-client relationship needs the protection of an evidentiary privilege, and the Court agrees in principle with Judge Weinstein that federal courts should recognize state privileges where this can be done at no substantial cost to federal policies. *See Lora v. Board of Education*, 74 F.R.D. 565, 576 (E.D.N.Y.1977). *Accord, Memorial Hospital v. Shadur*, 664 F.2d 1058 at 1061 (7th Cir. 1981).

However, the Committee raises weighty arguments in opposition to the recognition of the privilege. One is the unanimous rejection of the accountant-client privilege by every federal district court that has considered the privilege as a matter of federal law since the adoption of Rule 501. *See Federal Deposit Insurance Corp. v. Mercantile National Bank*, 84 F.R.D. 345, 349 (N.D. Ill.1979); *Mitsui & Co. v. Puerto Rico Water Resource Authority*, 79 F.R.D. 72, 78 (D.P. R.1978); *Belke v. Merrill Lynch, Pierce,*

*Fenner & Smith*, 78 F.R.D. 736 (S.D.Fla. 1978); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295, 313 (D.Md.1977). Another argument against recognition arises from the Fifth Circuit's recent categorical statement that "there is no accountant-client privilege under federal law." *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981).[9] The Court also notes that the accountant-client privilege was not among the nine specific privileges contained in the draft of the Federal Rules of Evidence submitted by the Supreme Court to Congress in 1974.[10] S.Rep.No.1277, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7051, 7058. It is true that none of these factors are dispositive of the question before the Court, because Rule 501 requires the Court to decide the question of the federal privilege on the facts of this case. *See Upjohn*, 449 U.S. at 395–97, 101 S.Ct. at 685–86, 66 L.Ed.2d at 595–96. The unanimity of these authorities however, suggests that this Court should not lightly recognize the privilege.

In a very recent opinion, the Fifth Circuit described the "notable hostility" of the federal courts to the creation of new privileges, and stated that a new privilege should be recognized only where there is a "compelling justification." *In re Dinnan*, 661 F.2d 426 at 430 (5th Cir. 1981). *Cf. Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980) (evidentiary privileges "contravene the fundamental privilege that 'the public ... has a right to every man's evidence'" (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950))); *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) (evidentiary privileges must be narrowly construed

---

**9.** Touche Ross downplays the importance of *Davis* by suggesting that the Fifth Circuit decided it without considering the Supreme Court's *Upjohn* opinion, decided one month earlier. Even assuming that this is the case, the Court still considers *Davis* as a general indication of the opinion of a respected court regarding the validity of the privilege, and as evidence that this Court is entitled to consider in making its determination on the facts of this case.

**10.** Congress rejected the Supreme Court's proposal, of course, and adopted Rule 501 in its stead. However, the Supreme Court recently stated that the omission of a privilege from the Court's 1974 proposal can be considered in subsequent decisions on whether to recognize that privilege. *United States v. Gillock*, 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980).

because they prevent the consideration of relevant evidence). Touche Ross implicitly suggests that the Fifth Circuit's "compelling justification" test is too strict, and contends that the Court should apply the test set out by Judge Weinstein in *Lora v. Board of Education*, 74 F.R.D. 565 (E.D.N. Y.1977), or that of the Seventh Circuit in *Memorial Hospital v. Shadur*, 664 F.2d 1058 (7th Cir. 1981).[11] Both of these opinions employ a balancing test in deciding whether to recognize the privilege.[12]

The Court is not convinced that the accountant-client privilege would pass muster even under the *Lora* or *Memorial Hospital* tests. The Court's doubts arise from two sources, one general and one specific. First, the Court believes that the general policies underlying the accountant-client privilege are far less compelling than those supporting the psychotherapist-patient privilege in *Lora* or the medical peer-group review privilege in *Memorial Hospital.* Second, the Court finds that any reliance on the accountant-client privilege in this case was unreasonable, on the analysis set forth earlier in this Order.

■ However, the Court need not consider the tests set forth in *Lora* and *Memorial Hospital*, because it is persuaded by *Dinnan* that a new privilege should be created only when there is a "compelling justification" for it. *Dinnan* appears to be more consistent with recent Supreme Court decisions in the area of privileges than are *Lora* and *Memorial Hospital. See, e.g.,* the above-quoted language from *Trammel* and *Nixon; cf. Upjohn*, 449 U.S. at 389, 101 S.Ct. at 682, 66 L.Ed.2d at 591 (the attorney-client privilege at issue there "is founded upon the *necessity,* in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice" (quoting *Hunt v.*

*Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888)) (emphasis added)). Touche Ross has not convinced the Court that it should recognize the accountant-client privilege in the absence of "compelling justification," and has failed to present such justification.

The Bankruptcy Court's Order of September 24, 1981 is AFFIRMED.

**11.** *Dinnan* was decided by the former Fifth Circuit after September 30, 1980, and consequently is not the law of the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 at 1209 n.5 (11th Cir. 1981) (en banc). Consequently the Court is free to consider other approaches to this issue.

**12.** The Court notes that both the *Lora* and the *Memorial Hospital* courts declined to recognize the privileges at issue there on the facts of those cases.